UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

LINDA D. SENEGAL                    CIVIL ACTION NO. 6:20-cv-00665

VERSUS                              JUDGE SUMMERHAYS

BOBBY GUIDROZ, ET AL.               MAGISTRATE JUDGE HANNA

## REPORT AND RECOMMENDATION

Pending before this Court is the motion to dismiss, under Fed. R. Civ. P. 12(b)(6), which was filed by certain defendants, namely, St. Landry Parish Sheriff Bobby Guidroz, and St. Landry Parish Sheriff's Deputies C. David, N. Whatley, M. Darbonne, A. Ned, E. McBride, J. Gordon, D. Morgan, T. Randazzo, H. Ponthier, and S. Ortega. (Rec. Doc. 3). The motion is opposed. The motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this Court. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, it is recommended that the motion should be granted in part and denied in part.

## Background

According to the complaint, the plaintiff, Linda D. Senegal, has two daughters, defendants Lencia Senegal and Vallian Senegal. The plaintiff's daughters allegedly contacted the St. Landry Parish coroner's office on August 23, 2019 and

again on August 27, 2019, seeking the issuance of a coroner's order for protective custody regarding the plaintiff.  The plaintiff contends that the information provided by her daughters in order to obtain the orders was false.

On August 27, 2019, St. Landry Parish sheriff's deputies allegedly attempted to serve such an order on the plaintiff.  They allegedly surrounded her home with their weapons drawn, pointed the weapons at the windows of her home, opened the closed door of a shed behind her home, allegedly demanded by means of a loud speaker that she come out of her house, and allegedly remained in place for two hours.  The plaintiff did not open the door of her home, and the deputies departed.  The order allegedly expired, and the plaintiff's daughters allegedly obtained a second order.  On August 29, 2019, sheriff's deputies allegedly returned to the plaintiff's home to serve the second order.  Again, Ms. Senegal did not open her door, and the deputies again left without incident.  Ms. Senegal alleged that one reason she refused to open the door to the deputies was that she experienced brutality at the hands of the St. Landry Parish Sheriff's department on a prior occasion, which led to a civil rights lawsuit that she filed in 2007.

In the instant lawsuit, the plaintiff sued her daughters Lencia and Vallian, St. Landry Parish Sheriff Bobby Guidroz, and ten sheriff's deputies.  She asserted claims under 42 U.S.C. § 1983, contending that her Fourth, Fifth, and Fourteenth Amendment rights to be secure in her home and to be left alone and not subjected to

police authority were violated by the deputies' actions, and she asserted that Sheriff Guidroz failed to train his deputies in the proper handling of protective orders issued by the coroner. She asserted a domestic terrorism claim under 18 U.S.C. § 2331. She also alleged that the defendants violated Louisiana state laws regarding false imprisonment, assault, and defamation.

Sheriff Guidroz and the deputies responded to the complaint with the instant motion to dismiss. In support of the motion, they argued that the official capacity claims against the deputies are redundant of the official capacity claims against Sheriff Guidroz, that the plaintiff failed to state a plausible deprivation of procedural due process claim, that the plaintiff failed to state a plausible deprivation of liberty claim under the Fourth or Fifth Amendments, that Sheriff Guidroz and the deputies are immune with regard to the state-law claims, and that Sheriff Guidroz and the deputies have qualified immunity with regard to the constitutional claims asserted against them in their individual capacities.

## Law and Analysis

### A.    The Standard for Analyzing a Rule 12(b)(6) Motion

A motion to dismiss for failure to state a claim, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, is appropriate when a defendant attacks the

complaint because it fails to state a legally cognizable claim.[1]  Such motions are

viewed with disfavor and rarely granted.[2]  When considering such a motion, a district

court must limit itself to the contents of the pleadings, including any attachments

thereto,[3] accept all well-pleaded facts as true, and view the facts in a light most

favorable to the plaintiff.[4]  However, conclusory allegations and unwarranted

deductions of fact are not accepted as true,[5] and courts "are not bound to accept as

true a legal conclusion couched as a factual allegation."[6]

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to

state a claim to relief that is plausible on its face."[7]  The allegations must be sufficient

"to raise a right to relief above the speculative level,"[8] and "the pleading must

contain something more. . . than. . . a statement of facts that merely creates a

---

[1]    *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

[2]    *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013); *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011).

[3]    *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

[4]    *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

[5]    *Collins v. Morgan Stanley*, 224 F.3d at 498.

[6]    *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

[7]    *Bell Atlantic v. Twombly*, 550 U.S. at 570.

[8]    *Bell Atlantic v. Twombly*, 550 U.S. at 555.

suspicion [of] a legally cognizable right of action."[9]  "While a complaint. . . does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[10]  If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed."[11]

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[12]  "[D]etermining whether a complaint states a plausible claim. . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[13]  Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true)

---

[9]      *Bell Atlantic v. Twombly*, 550 U.S. at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)).

[10]     *Bell Atlantic v. Twombly*, 550 U.S. at 555 (citations, quotation marks, and brackets omitted; emphasis added).  See, also, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[11]     *Bell Atlantic v. Twombly*, 550 U.S. at 570.

[12]     *Ashcroft v. Iqbal*, 556 U.S. at 678.

[13]     *Ashcroft v. Iqbal*, 556 U.S. at 679.

(3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim."[14]

## B.    The Official Capacity Claims Against the Deputies

The plaintiff asserted Section 1983 claims against Sheriff Guidroz and ten of his deputies, all of whom were sued in both their official and individual capacities. Section 1983 provides for claims against any person who "under color of any statute, ordinance, regulation, custom, or usage, of any State" violates another person's constitutional rights.[15]  Section 1983 is not a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere.[16]  To state a Section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.[17]  A local governmental entity can be sued under Section 1983 when it is alleged that the entity (usually a municipality) implemented or executed a policy or custom that resulted in

---

[14]     *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. at 556).

[15]     42 U.S.C. § 1983.

[16]     *Hernandez ex rel. Hernandez v. Texas Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 879 (5th Cir. 2004).

[17]     *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013); *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000).

the deprivation of a constitutional right.[18]  To state a claim for municipal liability under Section 1983, a plaintiff must allege an official policy or custom, of which a policy maker had actual or constructive knowledge, and a constitutional violation whose moving force was that policy or custom.[19]

In support of their motion to dismiss, Sheriff Guidroz and the deputies argued that the official capacity claims against the deputies are redundant of the official capacity claim against Sheriff Guidroz and should, therefore, be dismissed.  "A judgment in a § 1983 lawsuit against an official in his official capacity imposes liability against the entity he represents."[20]  Therefore, it is "well settled that a suit against a municipal official in his or her official capacity is simply another way of alleging municipal liability."[21]  A Louisiana sheriff's office is not a legal entity capable of being sued; instead, Louisiana sheriffs are amenable to suit.[22]  Thus, a

_____

[18]     *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 (1978).

[19]     *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

[20]     *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005); *Deshotels v. Village of Pine Prairie*, No. 11-CV-2052, 2012 WL 1712358, at *4 (W.D. La. Apr. 13, 2012), report and recommendation adopted, 2012 WL 1712549 (W.D. La. May 15, 2012).

[21]     *Howell v. Town of Ball*, No. 12-951, 2012 WL 3962387, at *4 (W.D. La. Sept. 4, 2012), aff'd 827 F.3d 515 (5th Cir. 2016) (citing *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978)).

[22]     *Cozzo v. Tangipahoa Parish Counsel*, 279 F.3d 273, 283 (5th Cir. 2002) (citing *Porche v. St. Tammany Parish Sheriff's Office*, 67 F.Supp.2d 631, 635 (E.D. La. 1999)); *Valentine v. Bonneville Ins. Co.*, 96-1382 (La. 03/17/97), 691 So.2d 665, 668.

suit against a sheriff is the functional equivalent of a suit against a governmental entity such as a municipality.  When, as in this case, the government entity itself – or the sheriff himself – is a defendant in the litigation, official capacity claims against specific individuals employed by the entity or sheriff are redundant, and for that reason, courts in this circuit have found that it is appropriate to dismiss them.[23]

The plaintiff did not address this argument in her briefing.  More important and in keeping with the foregoing reasoning, this Court finds that the plaintiff's claims against the ten deputies in their official capacities are redundant of the official capacity claim asserted against Sheriff Guidroz.  Accordingly, it is recommended that the motion to dismiss should be granted with regard to the official capacity claims against the deputies and that those claims should be dismissed.

## C.    **Procedural Due Process Claim**

Sheriff Guidroz and the deputies argued that, to the extent the plaintiff is attempting to assert a claim for deprivation of her procedural due process rights, that claim fails because the plaintiff was never actually seized and, if she had been seized, she would have been afforded the due process rights afforded by Louisiana's mental health laws, particularly La. R.S. 28:53.2.  The plaintiff alleged that Sheriff Guidroz

---

[23]      See, e.g., *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001); *Flores v. Cameron County, Tex.*, 92 F.3d 258, 261(5th Cir. 1996); *J.H. v. Neustrom*, No. 6:15-CV-02525, 2016 WL 7638309, at *6 (W.D. La. Dec. 14, 2016), report and recommendation adopted, 2017 WL 29054 (W.D. La. Jan. 3, 2017) (dismissing official capacity claims against a sheriff's deputy as redundant of claims asserted against the Lafayette Parish sheriff).

8

and the deputies attempted to serve and execute a coroner's order for protective custody of the plaintiff, but their efforts ended when the plaintiff failed to open the door of her house and the law enforcement officers left her premises. Thus, the coroner's order was neither served nor executed, and the plaintiff was neither arrested nor taken into custody for a mental health evaluation. The plaintiff did not allege that the coroner's order was defective because she was not afforded a hearing or other procedural protections before the order was issued. Similarly, the plaintiff did not allege that she was entitled to a hearing or other procedural protections either before or after the events described in her complaint.

"The core requirement of procedural due process is the opportunity to be heard at a meaningful time and in a meaningful manner."[24] The analysis of a claim for the denial of procedural due process requires that (1) the court determine whether state action has deprived the plaintiff of life, liberty, or property, and, if such a deprivation is found, (2) the court must then determine whether state procedures for challenging the deprivation satisfy due process.[25]

The plaintiff did not allege that she was arrested, physically apprehended, or taken into custody. While she alleged that the coroner's order was based on false

---

[24]    *Houston Fed. of Teachers, Local 2415 v. Houston Indep. Sch. Dist.*, 251 F.Supp.3d 1168, 1175 (S.D. Tex. 2017) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

[25]    See *Augustine v. Doe*, 740 F.2d 322, 327 (5th Cir. 1984).

information provided by her daughters, she did not allege that, either before or after the officers arrived at her home, she was denied a hearing or any other process to which she might have been entitled. Therefore, the plaintiff did not allege facts sufficient to support a procedural due process claim. Accordingly, this Court recommends that, to the extent such a claim was presented in the plaintiff's complaint, that claim should be dismissed.

### D.      Fifth Amendment Claim

Sheriff Guidroz and the deputies argued that the plaintiff failed to state a plausible substantive due process claim under the Fifth Amendment. The Fifth Amendment's due process clause applies only to actions by the federal government.[26] The plaintiff did not allege that any federal law enforcement officers were involved in the events described in her complaint. Instead, she alleged that the governmental actors were the sheriff of a Louisiana parish and his deputies. Accordingly, the plaintiff did not state a plausible Fifth Amendment claim.

### E.      Fourth Amendment Claim

The plaintiff contends that Sheriff Guidroz and the deputies used excessive force in attempting to serve and execute a coroner's order. Sheriff Guidroz and the deputies acknowledged that individuals have a right protected by the Fourth

---

[26]      *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996).

Amendment to be free from deprivation of liberty due to an alleged wrongful involuntary commitment,[27] but argued that there was no wrongful deprivation in this case because the deputies were attempting to execute a valid order. Sheriff Guidroz and the deputies suggested that the order was issued under La. R.S. 28:53 and was an order for a temporary detention for a mental health examination. They further argued that, because the plaintiff was not "actually seized," the deputies were attempting to do something within their legal authority.

There are two problems with the defendants' argument. First, the plaintiff did not allege in her complaint that the coroner's order that the deputies were attempting to serve and execute in August 2019 was issued under La. R.S. 28:53.2. She did not attach a copy of the coroner's order to her complaint, nor did the defendants submit a copy of any such order along with the documents that they filed in the record of this lawsuit. Further, the defendants did not establish that *all* orders issued by coroners in Louisiana are *always* issued pursuant to and governed by the cited statute. Therefore, this court cannot conclude that the order being served at that time was governed by La. R.S. 28:53.2 or that the deputies were acting pursuant to authority granted by that statute.

---

[27]    See *Vitek v. Jones*, 445 U.S. 480, 491-92 (1980).

Second, the defendants seem to misinterpret the gist of the plaintiff's complaint. She did not allege that the deputies had no authority to serve or execute the coroner's order; instead, she alleged that the deputies used excessive force in attempting to do so. Thus, she complained about the *manner* in which the deputies went about the task. When law enforcement officers are charged with executing orders of a governmental official, their authority to act includes an inherent duty to execute the order lawfully and without excessive force.

Claims that law enforcement officers used excessive force are analyzed under the Fourth Amendment.[28] The Fourth Amendment creates a clearly established right to be free from excessive force during a seizure.[29] A seizure that triggers Fourth Amendment protections occurs only when government actors have, by means of physical force or a sufficient show of authority, restrained an individual's liberty[30] and a reasonable person would believe that he was not free to leave.[31] To prove an excessive force claim, a plaintiff must show (1) an injury; (2) the injury resulted

---

[28]    See *Mace v. City of Palestine*, 333 F.3d 621, 624 (5th Cir. 2003) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

[29]    *Trammell v. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017); *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

[30]    *Campbell v. McAlister*, 162 F.3d 194, *3 (5th Cir. 1998) (unpublished) (citing *California v. Hodari D.*, 499 U.S. 621, 626 (1991)).

[31]    *United States v. Mask*, 330 F.3d 330, 336 (5th Cir. 2003) (citing *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).

directly and only from a clearly excessive use of force; and (3) the force used was objectively unreasonable.[32]  Excessiveness turns upon whether the degree of force used was reasonable in light of the totality of the circumstances facing the officer in each case.[33]  By nature, excessive force claims are fact-intensive and dependent on the circumstances of each case.[34]  Factors that the court should consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[35]

In this case, the plaintiff alleged that she did not know at the time why the deputies appeared at her home.  She alleged that she observed them through her home video monitoring system as they surrounded her house and pointed their drawn weapons at the windows of her home.  She alleged that they remained in place for two hours.  She alleged that she feared what might happen if she opened her door to them, based on a prior experience that led to her filing an excessive force lawsuit against the St. Landry Parish Sheriff.  She described the deputies' actions as an

---

[32]    See, e.g., *Westfall v. Luna*, 903 F.3d 534, 547 (5th Cir. 2018); *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009).

[33]    *Deville v. Marcantel*, 567 F.3d at 167 (citing *Graham v. Connor*, 490 U.S. at 396.

[34]    *Deville v. Marcantel*, 567 F.3d at 167.

[35]    *Trammell v. Fruge*, 868 F.3d at 340 (quoting *Graham v. Connor*, 490 U.S. at 396).

"overwhelming show of force."  There is no indication that she had committed a crime, that she posed an immediate threat to the safety of the officers or others, or that she actively resisted arrest or attempting to evade arrest by flight.

Viewing the well-pleaded facts set forth in the complaint in the light most favorable to the plaintiff, the plaintiff was in her home when the deputies arrived, she did not know that her daughters had given false information to the coroner, she did not know that a coroner's order had been issued, and she posed no threat to the deputies, yet they drew their weapons, opened a closed door to an outbuilding near her home, demanded over a loud speaker that she voluntarily allow herself to be taken into custody, and remained outside her home brandishing their weapons for a considerable length of time.  These facts state a plausible claim that the level of force used by the deputies was excessive.[36]

Taking the plaintiff's allegations as true, as must be done when considering a motion to dismiss, the plaintiff has sufficiently alleged an injury.  The plaintiff alleged that she feared for her life while the deputies were outside her house and alleged that the deputies' actions caused her to experience unnecessary fear and

---

[36]    Even if there was no seizure, the plaintiff might still have a valid claim.  See, e.g., *Summers v. Hinds County, Mississippi*, No. 3:20-CV-266-DPJ-FKB, 2020 WL 7495601, at *8 (S.D. Miss. Dec. 21, 2020) (quoting *Petta v. Rivera*, 143 F.3d 895, 901 (5th Cir. 1998)) ("Where a citizen alleges an officer deployed excessive force against her in circumstances not involving a seizure . . . she 'may still state a claim under § 1983 for a violation of. . . her Fourteenth Amendment substantive due process right, and have the claim judged by the constitutional standard which governs that right.'")

apprehension. Even insignificant injuries may support an excessive force claim as long as the injuries result from unreasonably excessive force. "[A]s long as a plaintiff has suffered some injury, even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force."[37] Further, when accepting the plaintiff's allegations as true, there was an intentional show of governmental authority. Finally, it is certainly arguable that, during the time that the deputies were outside her home, the plaintiff did not believe she was free to leave. Thus, the plaintiff's allegations are sufficient to establish a seizure.

While discovery, further motion practice, or a trial on the merits might ultimately establish that the plaintiff is not entitled to recover from the defendants, this Court finds that it would not be appropriate to dismiss the plaintiff's Fourth Amendment claim at this stage of the litigation.

E.    **State Law Claims**

Sheriff Guidroz and the deputies argued that the plaintiff's state-law claims should be dismissed because Louisiana law enforcement officers have statutory immunity from civil liability when executing a coroner's order under La. R.S. 28:53.2. As noted above, however, the plaintiff did not allege in her complaint that

---

[37]    *Alexander v. City of Round Rock*, 854 F.3d 298, 310 (5th Cir. 2017).

the coroner's order was issued under La. R.S. 28:53.2, there is no copy of the coroner's order in the suit record, and the defendants did not establish that all orders issued by coroners in Louisiana are always issued pursuant to and governed by the cited statute. Therefore, this court cannot conclude that the order being served at that time was governed by La. R.S. 28:53.2 or that the deputies are entitled to any immunities that might be afforded by that statute.

**F.    <u>Qualified Immunity</u>**

Sheriff Guidroz and the deputies argued that they are entitled to qualified immunity with regard to the Section 1983 claims asserted against them in their individual capacities. When, as in this case, a plaintiff seeks money damages from government officials in their individual capacities under Section 1983, the affirmative defense of qualified immunity is available to protect defendants "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[38] The qualified immunity doctrine balances two often conflicting interests, i.e., "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they

---

[38]    *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

16

perform their duties reasonably."[39]  In effect, qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."[40]  Qualified immunity is nominally characterized as an affirmative defense; however, once raised by a defendant, the plaintiff must negate the defense by showing that the official's conduct violated clearly established law.[41]

In determining whether a defendant is entitled to qualified immunity, the specific conduct of each individual defendant should be addressed separately.[42] However, "[s]eparate consideration does not require courts to conduct a separate analysis for each officer in those cases where their actions are materially indistinguishable, it merely requires them to consider each officer's actions."[43]

In this case, the plaintiff asserted individual capacity claims against Sheriff Guidroz and ten deputy sheriffs.  In her complaint, she did not specify what actions were undertaken by each of those eleven people.  Therefore, this Court is unable to

---

[39]     *Pearson v. Callahan*, 555 U.S. at 231.

[40]     *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)) (internal quotation marks omitted).

[41]     *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

[42]     *Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 325 n. 7 (5th Cir. 2020); *Westfall v. Luna*, 903 F.3d at 549 (citing *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 731 (5th Cir. 2018)); *Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007); *Jacobs v. West Feliciana Sheriff's Dep't*, 228 F.3d 388, 395 (5th Cir. 2000).

[43]     *Meadours v. Ermel*, 483 F.3d at 422 n.3.

determine, based on the facts set forth in the complaint, whether any of them are entitled to qualified immunity.

Under Fed. R. Civ. P. 15, a court should freely give leave to amend a complaint when justice so requires. Therefore, a court generally should not dismiss an action for failure to state a claim under Rule 12(b)(6) without giving the plaintiff at least one chance to amend.[44] Indeed, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner which will avoid dismissal."[45] The decision to allow amendment of a party's pleadings is within the sound discretion of the district court.[46]

This Court finds that it would be inequitable to dismiss the plaintiff's complaint without allowing her an opportunity to remedy the sparseness of the factual allegations set forth in the complaint concerning the specific conduct of Sheriff Guidroz and the deputies during the incidents in question, given that all of them were sued in their individual capacities and all of them asserted a qualified

---

[44]    *Hernandez v. Ikon Office Solutions, Inc*., 306 Fed. App'x 180, 182 (5th Cir. 2009); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co*., 313 F.3d 305, 329 (5th Cir. 2002).

[45]    *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co*., 313 F.3d at 329.

[46]    *Norman v. Apache Corp*., 19 F.3d 1017, 1021 (5th Cir. 1994) (citing *Avatar Exploration, Inc. v. Chevron, U.S.A., Inc*., 933 F.2d 314, 320 (5th Cir. 1991)).

immunity defense.  However, it may not be possible for the plaintiff to do so until after discovery has been undertaken.  Therefore, it is recommended that discovery directed toward the issue of qualified immunity should be permitted, the plaintiff should be permitted to file an amended complaint for the purpose of alleging a more detailed factual basis for her claims, and Sheriff Guidroz and the deputies should be afforded an opportunity to file another Rule 12(b)(6) motion to dismiss if necessary or appropriate following the filing of the amended complaint.  The defendants are cautioned, however, that a motion for summary judgment is usually a better vehicle for asserting qualified immunity.

## Conclusion

For the foregoing reasons, IT IS RECOMMENDED that:

a.      the motion to dismiss (Rec. Doc. 3) should be granted with regard to the official capacity claims asserted against the defendant deputies, namely, C. David, N. Whatley, M. Darbonne, A. Ned, E. McBride, J. Gordon, D. Morgan, T. Randazzo, H. Ponthier, and S. Ortega, and those claims should be dismissed without prejudice;

b.      the motion to dismiss (Rec. Doc. 3) should be granted with regard to any procedural due process claims asserted against Sheriff Guidroz and the defendant deputies, namely, C. David, N. Whatley, M. Darbonne, A. Ned, E.

McBride, J. Gordon, D. Morgan, T. Randazzo, H. Ponthier, and S. Ortega, and those claims should be dismissed without prejudice;

c.      the motion to dismiss (Rec. Doc. 3) should be granted with regard to any Fifth Amendment due process claims asserted against Sheriff Guidroz and the defendant deputies, namely, C. David, N. Whatley, M. Darbonne, A. Ned, E. McBride, J. Gordon, D. Morgan, T. Randazzo, H. Ponthier, and S. Ortega, and those claims should be dismissed without prejudice;

d.      the motion to dismiss (Rec. Doc. 3) should be denied with regard to the Fourth and Fourteenth Amendment claims asserted against Sheriff Guidroz and the defendant deputies, namely, C. David, N. Whatley, M. Darbonne, A. Ned, E. McBride, J. Gordon, D. Morgan, T. Randazzo, H. Ponthier, and S. Ortega;

e.      the plaintiff should be granted leave of court to amend her complaint to allege with greater specificity the conduct of Sheriff Guidroz and the individual deputies on the dates in question and to conduct discovery, if necessary, beforehand; and

f.      Sheriff Guidroz and the defendant deputies, namely, C. David, N. Whatley, M. Darbonne, A. Ned, E. McBride, J. Gordon, D. Morgan, T. Randazzo, H. Ponthier, and S. Ortega, should be granted leave of court to file another Rule 12(b)(6) motion or a motion for summary judgment addressing the issue of qualified immunity when appropriate to do so.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[47]

Signed at Lafayette, Louisiana, this 1st day of February 2021.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

---

[47] See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).